UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THOMAS WILLIAM GOODE, | ) | Civil Action No.: 4:19-cv-03289-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| -vs- | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB and SSI on March 15, 2016, alleging inability to work since July 5, 2015. (Tr. 13). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on August 1, 2018, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 13). The Administrative Law Judge (ALJ) issued an unfavorable decision on November 26, 2018, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 13-27). Plaintiff filed a request for review of the ALJ's decision. The

Appeals Council denied the request for review. On November 22, 2019, Plaintiff filed this action. (ECF No. 1).

**B.      Plaintiff's Background and Medical History**

Plaintiff was born on August 2, 1972, and was forty-two years old at the alleged onset date. Plaintiff had past relevant work as a landfill operator, welding machine operator, roving changer, machine maintenance worker, and tire changer. (Tr. 24). Plaintiff alleges disability originally due to congestive heart failure and degenerative discs. (Tr. 86). Pertinent medical records will be summarized under the relevant headings.

**C.      The ALJ's Decision**

In the decision of November 26, 2018, the ALJ made the following findings of fact and conclusions of law (Tr. 27):

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2.  The claimant has not engaged in substantial gainful activity since July 5, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative joint disease of the left knee status post arthroplasty, degenerative joint disease of the right knee, degenerative disc disease, obesity and reading disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, I find that over the course of an 8-hour workday, in 2-hour increments with normal and acceptable work breaks, the claimant can perform work at the LIGHT exertional level as defined in 20 CFR 404.1567(b) and 416.967(b), except that standing and walking combined can be performed for 4 hours out of an 8-hour workday,

      sitting can be performed for 6 hours out of an 8-hour workday, and the bilateral use of foot controls is limited to occasional within the exertional level. He can never climb ladders, ropes and scaffolds. He can occasionally climb ramps and stairs, kneel, crouch and crawl. He can occasionally stoop to lift within the exertional level from the floor to the waist. He can frequently stoop to lift within the exertional level from waist height and above. He can frequently balance. He can occasionally be exposed to vibration, and hazards associated with unprotected dangerous machinery or unprotected heights. He can concentrate, persist and maintain pace to understand, remember and carry out unskilled, routine tasks, in a low stress work environment (defined as being free of fastpaced or team-dependent production requirements), involving the application of commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. He can deal with problems involving several concrete variables in or from standardized situations. He can adapt to occasional work place changes. He can read basic text, but may need some assistance more detailed reading tasks. He should not be openly exposed to controlled substances or prescription medications (such as work in a pharmaceutical manufacturing plant, medical facility or pharmacy).

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on August 2, 1972 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 5, 2015, through the date of this decision (20 CFR

404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ should have accorded great weight to Dr. Phillips' opinions. (ECF No. 19 at 11). Plaintiff requests reversal for benefits. Defendant argues substantial evidence supports the weight given.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments

---

20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.    ANALYSIS**

**<u>Dr. Phillips' Opinions</u>**

Plaintiff argues the ALJ should have given great weight to Dr. Phillips' opinions. The appropriate analysis is whether substantial evidence supports the ALJ's assignment of weight to Dr. Phillips' opinions.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the

7

relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors.  *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Even when a treating opinion is not entitled to controlling weight, "it does not follow that the ALJ ha[s] free reign to attach whatever weight to that opinion that he deem[s] fit." *Dowling v. Comm'r of Soc. Sec. Admin.*, 2021 WL 203371, at *5 (4th Cir. Jan. 21, 2021)(published). It must be "apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." *Id.* at *5. The Fourth Circuit Court of Appeals found where only the factors of supportability and consistency were discussed by the ALJ and other factors of length, frequency, nature, and extent of treating relationship were ignored, it was error necessitating remand. *Id.* at *5. "20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (emphasis in original).

In June 22, 2016, within an office visit note, Dr. Phillips opined:

> Patient has severe arthritis bilateral knees. He is unable to do any significant employment at this time that involves standing, squatting, or kneeling. His ability to sit and concentrate is also limited due to his knee pain. I have recommended pain management [and] he is having difficulty finding pain management. I did explain to them that we will only fill his opioids for another couple of months. I would recommend a left total knee replacement at this time based on his pain with all activities. I did explain to him as he is at higher than usual risk due to his obesity.

(Tr. 405)(Exhibit 5F).[3]

In March 2018,[4] Dr. Phillips opined Plaintiff could only lift a maximum of five pounds occasionally and nothing frequently. (Tr. 441). Findings to support such were written in as advanced arthritic disease of right knee and left knee replacement. Plaintiff could only stand/walk a total of two hours in a day and only 30 minutes at one time. Sitting was not impaired at all. (Tr. 441). Plaintiff was limited to "never" in all postural categories due to limited motion in knees and arthritic findings in right knee. (Tr. 442). Plaintiff had no manipulative limitations or environmental restrictions. (Tr. 442-443).

The ALJ examined and weighed the two opinions by Dr. Phillips:

> In sum, the evidence documents a long history of knee pain, aggravated by an obese habitus. However, objective findings are not indicative of symptoms that would preclude performance of work within the confines of the above noted RFC assessment.
>
> In reaching this conclusion, I attribute some weight to the initial opinion of treating physician Dr. Phillips. On July 22, 2016, treating physician Dr. Phillips noted that the claimant has severe arthritis bilateral knees. Dr. Phillips opined that the claimant is unable to do any significant employment at this time that involves standing, squatting, or kneeling. His ability to sit and concentrate is also limited due to his knee pain (Exhibit 6F). However, it is noted that this opinion was rendered just prior to the claimant's September 19, 2016 total knee replacement and January 26, 2017 left knee manipulation under anesthesia (MUA), which renders its longitudinal relevancy less persuasive.
>
> In a more recent medical source statement after the claimant's knee surgery, Dr.

---

[3] It is evident from the record that the ALJ is weighing this evidence at Exhibit 5F and not Exhibit 6F as cited by the ALJ because statements about Plaintiff's ability to sit, stand, squat, and kneel are not included in the July 22, 2016 note(6F) compared to the June 22, 2016 note(5F).

[4] It is evident from the record that the date on the form completed by Dr. Phillips is not accurate stating March 20, 2019, as it was in evidence exhibited at the time of the ALJ's November 2018 opinion. (Tr. 443). The record table of contents lists the opinion as March 2018.

> Phillips opined on March 20, 2018 that the claimant would be limited to carrying up to 5 pounds occasionally and standing/walking 2 hours in an 8-hour workday. He would have no impairments in sitting but he could never perform postural activities (Exhibit 7F). In attributing partial weight to this opinion, I note that Dr. Phillips has a longitudinal treatment history with the claimant and is familiar with the claimant's expressed symptoms and examination findings. Furthermore, the opinion is not entirely consistent with the weight of the objective medical evidence. However, greater weight is not attributed to his conclusions as they were rendered on a checkbox form with selective options.[5] Moreover, limitations on standing and walking, general limitations on all postural, and to some extent the claimant's ability to lift and carry, are not fully supported by the medical record. For instance, on March 21, 2017, the claimant was noted to have no laxity in the left and right knees. Strength was 5/5 with flexion and extension in both knees. No joint tenderness was appreciated in the right knee. X-rays of the left knee indicated the knee replacement was in good position.

(Tr. 23-24).

The following are summarized contemporaneous treatment notes of Dr. Phillips.

On July 8, 2015, Plaintiff was seen by Dr. Phillips for follow up after right knee scope and partial meniscectomy and chondroplasty. Plaintiff was a little bit improved with some pain at night. (Tr. 333). Upon exam, Plaintiff was overweight and ambulating normally. Plaintiff had mild tenderness and no swelling. (Tr. 335). Plaintiff was told to do exercises and weaning off of pain medications was discussed. Amitriptyline at night was prescribed. (Tr. 335).

On August 12, 2015, Plaintiff was seen by Dr. Phillips. (Tr. 330). Plaintiff reported both knees hurt extremely bad and he was unable to work due to pain. Plaintiff was nine weeks post right knee scope. Plaintiff only worked a few weeks. Plaintiff had swelling in both knees. Upon exam,

---

[5] As to the ALJ's discounting of the opinion because it was on a checkbox form, where there is a lack of explanation, checkbox opinions would be considered weaker evidence. *See Roof v. Saul*, No. CV 5:19-1571-MGL-KDW, 2020 WL 3549206, at *11 (D.S.C. June 23, 2020), *adopted*, 2020 WL 3548814 (D.S.C. June 30, 2020)(collecting cases). But here, Dr. Phillips wrote in basis for checked opinions and wrote in hours for stand/walk limits, the question was not a box for ranges.

Plaintiff had limited ambulation. Plaintiff was overweight. Plaintiff had swelling and tenderness. (Tr. 331). Plaintiff received a cortisone injection in both knees. (Tr. 332). Plaintiff was instructed to do exercises and told that he may have had a flare reaction that may last for several days and to use ice. (Tr. 332).

On August 17, 2015, Plaintiff was seen by Dr. Phillips. (Tr. 327). Plaintiff had a right knee injection the prior week and now states his knee hurts really bad and is using crutches again. (Tr. 327). Plaintiff reported doubling his Percocet, taking two every four hours to get relief. (Tr. 328). Plaintiff was overweight with swelling and tenderness. (Tr. 329). Plaintiff received a right knee intra articular aspiration. Plaintiff was prescribed amitriptyline and prednisone. Plaintiff was told to only take one pain pill, not two. (Tr. 329).

On September 11, 2015, Plaintiff was seen by Dr. Phillips. (Tr. 324). Plaintiff reported his knee pain had worsened since starting work in August. Plaintiff was using crutches. Plaintiff was overweight with swelling and tenderness. (Tr. 325-326).

On October 27, 2015, Plaintiff was seen by Dr. Phillips. (Tr. 321). Plaintiff reported having fluid on both knees and trouble walking. (Tr. 321). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations with limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. Plaintiff received intra-articular knee aspiration. Plaintiff was to use ice. It was too early for another steroid injection. "It is still okay for you to try to go to work." (Tr. 323.

On November 9, 2015, Plaintiff was seen by Dr. Phillips. (Tr. 317). Plaintiff reported he went back to work driving a bulldozer after having his knee aspirated the week prior and now was having pain in his left knee. (Tr. 317). "Patient returns with complaints of left knee pain and

swelling since he has gone back to work. He climbs up and down off of heavy equipment, has had increasing pain and swelling. He states the current pain medicine regimen he is on is not effective. His pain is severe and is associated with swelling." (Tr. 318). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations and limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. X-ray showed significant narrowing of the medial compartment with left worse than right; impression was moderate left knee arthritis. Medications were Oxycodone-acetaminophen 10mg-325mg for breakthrough pain, OxyContin 60mg extended release one every 12 hours, Cymbalta, and Prednisone. (Tr. 319). Instructions were to use ice on his knee after work. (Tr. 319). Dr. Phillips had a long discussion with Plaintiff as to pain medication use. Plaintiff was warned any change in his medication regimen other than as prescribed would result in no more medications. (Tr. 319).

On December 18, 2015, Plaintiff was seen by Dr. Phillips for his left knee. Plaintiff reported not getting any pain relief no matter what he does. (Tr. 313). Plaintiff reported swelling and moderate to severe pain. (Tr. 314). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations and limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. (Tr. 315). An aspiration injection was performed. Plaintiff was to continue to use ice and stay on the same pain regimen and return in three months. Dr. Phillips noted there was no need to consider another arthroscopic because the last one was unsuccessful but consideration could be given to a knee replacement. (Tr. 316).

On February 26, 2016, Plaintiff was seen by Dr. Phillips for left knee recheck with Plaintiff

reporting pain in both knees with stiffness, locking up, and some popping/cracking in left knee. (Tr. 309). History noted Plaintiff had been laid off his job because he was unable to keep up due to his knee pain. Dr. Phillips noted Plaintiff gets relief with his current pain regimen. (Tr. 311). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations and limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. Diagnosis were chronic low back pain and osteoarthritis of knees. Once Plaintiff was under the care of a pain specialist, knee replacement could be considered. (Tr. 311). "Patient remained symptomatic with both of his knees. He does have advanced osteoarthritis and would probably benefit from knee replacement although he is at moderate risk due to his young age and obesity and would probably have some residual pain due to his chronic opioid use." (Tr. 311).

On June 22, 2016, Plaintiff was seen by Dr. Phillips. (Tr. 403). Plaintiff's chief complaint was knee pain and application for disability. "He gets some relief with his current pain regimen. He has been unable to find pain management and has been turned down by several providers. He is no longer able to work because of his knee pain and has lost his most recent job. His pain is moderate to severe." (Tr. 405). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations and limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. (Tr. 405). Oxycodone was refilled and it was noted "we will only fill your pain medicine for the next 2 months and then he will be on your own after that." (Tr. 405). The opinion as noted above was also included in the discussion notes.

On July 22, 2016, Plaintiff was seen by Dr. Phillips. (Tr. 399). Plaintiff reported he still has

a lot of pain in both knees and needed an amitriptyline refill. (Tr. 399). Plaintiff reported getting some relief from taking amitriptyline at night in addition to his pain medications. Plaintiff had questions about knee replacement. (Tr. 401). Upon exam, Plaintiff was obese with a limp and antalgic gait. Plaintiff's right and left knees had swelling and tenderness in several locations and limited flexion/extension. Apley's compression test was positive. Strength at extension of both knees was 3/5. (Tr. 401). Plaintiff needed to get with a pain management specialist and knee replacement could be considered. Plaintiff was to take medications as prescribed. (Tr. 401).

On September 7, 2016, Plaintiff was seen by Dr. Phillips. (Tr. 410). Plaintiff was seen for a pre-operative appointment for a knee replacement upcoming on September 19. (Tr. 410). History was long history of left knee pain associated with degenerative joint disease with conservative treatment of NSAIDs, corticosteroid injections, and physical therapy only providing minimal benefit such that pain now interferes with activities of daily living and Plaintiff was having a total left knee replacement. (Tr. 411). Upon exam, Plaintiff was obese with waddling, antalgic gait, limited motion in knees with effusion, tenderness, and pain with Apley grind. (Tr. 412).

On September 19, 2016, Plaintiff had a total left knee replacement. (Tr. 438).

On October 12, 2016, Plaintiff was seen by Dr. Phillips three weeks after surgery. Plaintiff reported it hurt like "hell"; "he has not had any pain meds." (Tr. 414). Upon exam, Plaintiff ambulated with a walker. Plaintiff had moderate swelling, moderate to severe tenderness, and limited motion. (Tr. 415). Plaintiff was prescribed OxyContin and Percocet. Plaintiff was to continue to progressively bear weight as tolerated and get aggressive with working on movement. (Tr. 416).

On November 2, 2016, Plaintiff was seen by Dr. Phillips. (Tr. 417). Plaintiff reported a lot

of pain and did not have the movement he thought he would. Plaintiff reported some relief with medication and did not feel he was advancing in therapy. (Tr. 418). Upon exam, Plaintiff ambulated with a cane, was overweight, had moderate swelling, moderate tenderness, and limited motion. Imaging showed left knee replacement in good position with no adverse features noted. (Tr. 418). Plaintiff was given a splint for postoperative stiffness. (Tr. 419). If movement was not better in three weeks, a manipulation was to be considered.

On November 23, 2016, Plaintiff was seen by Dr. Phillips. (Tr. 420). Plaintiff reported his left knee felt the same with no flexibility and reported his right knee pain had worsened. Under history, it was noted Plaintiff received minimal relief from current pain regimen. (Tr. 421). Upon exam, Plaintiff had waddling, antalgic gait, moderate tenderness, and no gross instability. (Tr. 422). Plaintiff was to get a continuous passive motion machine for left knee stiffness. Knee manipulation of left knee under anesthesia was scheduled. (Tr. 422). It was scheduled because he could not achieve ninety degrees flexion. (Tr. 422).

On January 8, 2017, Plaintiff was seen by Dr. Phillips. (Tr. 423). Plaintiff reported his left knee was very painful. Under history, it was noted Plaintiff's pain was moderate to severe with minimal relief from current regimen. (Tr. 424). Upon exam, Plaintiff had waddling, antalgic gait and moderate left knee tenderness. A manipulation was scheduled. (Tr. 426).

On January 26, 2017, Plaintiff had a left knee manipulation under anesthesia. (Tr. 440).

On February 3, 2017, Plaintiff was seen by Dr. Phillips. (Tr. 428). Plaintiff reported his knee was moving better and feeling better after the manipulation. (Tr. 428). Upon exam, Plaintiff ambulated with a cane. Plaintiff had tenderness and limited motion. Plaintiff had no swelling. (Tr. 429). Plaintiff was making some progress and was instructed to continue to push flexion on the cpm

machine. Plaintiff was encouraged to be quite aggressive with rehabilitation. (Tr. 430).

On March 21, 2017, Plaintiff was seen by Dr. Phillips. (Tr. 431). Plaintiff reported popping and clicking in his left knee. (Tr. 431). Plaintiff continued to have some swelling and pain over the medial side of his knee. (Tr. 432). Upon exam, Plaintiff had antalgic gait, tenderness, limited flexion/extension, and decreased sensation lateral to the incision. Plaintiff had no edema. (Tr. 433). Imaging showed noncemented total knee replacement in good position with components appearing to be slightly undersized. Assessment was persistent pain six months after replacement. (Tr. 433). Overall, the x-ray looked good. Plaintiff needed to follow up with pain management. After the pain management visit, Dr. Phillips would be unable to write pain prescriptions for Plaintiff. "Clinically, he continues to have significant pain." Plaintiff was to see pain management in April 2017. (Tr. 433).

A year later, Plaintiff was seen on March 20, 2018 by Dr. Phillips. (Tr. 434). Plaintiff reported continued right knee pain and that his knee still hurts about all of the time. "He is having some swelling in his knee. He is trying to get on disability now." (Tr. 434). Plaintiff complained of pain and swelling in the left knee and severe pain in the right knee. "He is being followed by pain management but apparently is currently not taking any opioids." "He is trying to get on his disability." (Tr. 435). Upon exam, Plaintiff was morbidly obese with antalgic gait. (Tr. 436). Upon exam, Plaintiff had pretibial edema on both sides and tenderness on both sides. Strength was 5/5. (Tr. 436). X-ray of left knee was normal. X-ray of right knee showed advanced medial compartment disease, significant patellofemoral disease, and bone-on-bone findings of the medial compartment. (Tr. 436). Plaintiff needed to work on weight/medical status before consideration of a right knee replacement. (Tr. 436).

In discounting Dr. Phillips' opined limitation of two hours of standing/walking, the ALJ stated it was not "fully supported by the medical record" and then cited to a single visit note of March 2017 of some normal findings without resolution of conflicting exam findings at the same visit of antalgic gait, tenderness, limited flexion and extension, and decreased sensation lateral to the incision and "[c]linically, he continues to have significant pain" and also without resolution of a lengthy prior exam history of abnormal findings consistently at other visits. (Tr. 433, and above). This is of importance as the ALJ found an RFC of standing/walking four hours in a workday. While in other locations of the ALJ's opinion, the ALJ acknowledges multiple antalgic gait examinations and bone-on-bone imaging findings; the ALJ does not resolve such conflicting evidence with an RFC of modified light or explain how such exam findings would be inconsistent with Plaintiff's treating specialist's opined limitation of two hours of standing/walking. Further, while noting "orthopedic" records previously in the ALJ's opinion, the ALJ never addresses the 20 C.F.R. § 404.1527(c) factor that Dr. Phillips was Plaintiff's treating orthopedist when weighing Dr. Phillips' opined limitations as required. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 2021 WL 203371, at *5 (4th Cir. Jan. 21, 2021)(published); *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16(4th Cir. 2020).

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (*quoting Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope

of review. *See Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015). The ALJ did not properly evaluate the 20 C.F.R. § 404.1527(c) factors in relation to the evidence in the record and Dr. Phillips' opinions. It is not the court's "role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 Fed. Appx. 750, 755 (4th Cir. Dec. 17, 2015). "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017)(internal citations omitted). Based on the foregoing, the court can not find that the ALJ's decision regarding the evaluation of Dr. Phillips' opinions is supported by substantial evidence and remand is appropriate.

### III. RECOMMENDATION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed and this matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

April 21, 2021
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge